**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.R. and M.R.**

**No. 21-0392** (Raleigh County 19-JA-129-P and 19-JA-130-P)

## MEMORANDUM DECISION

Petitioner Mother T.R., by counsel Matthew A. Victor, appeals the Circuit Court of Raleigh County's April 28, 2021, order terminating her parental rights to A.R. and M.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Amber Hinkle, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner failed to adequately supervise the children or left them in the care of strangers. The DHHR also alleged that the home was cluttered with trash, debris, old food in the sinks, and had little food in the refrigerator. The children were dirty but appeared to be healthy. However, A.R. was truant in school, and petitioner admitted that she failed to get him to school. The petition listed both A.R. and M.R. as living with petitioner and indicated that she and the father had a prior child custody case in family court with an appointed guardian ad litem who interviewed the children. According to that guardian, the children reported hearing petitioner and others talk about "dope" and a dealer, and the adults would shut the door and tell the children to go away. The guardian also stated that the children described the mother leaving them alone in the home at night. Thereafter, petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

waived her preliminary hearing, and the circuit court ordered her to submit to drug and alcohol screens at the Raleigh County Day Report Center. During a multidisciplinary team ("MDT") meeting in June of 2019, petitioner disclosed that she had used methamphetamine.

The DHHR filed an amended child abuse and neglect petition in August of 2019 adding the children's father as a respondent parent. The DHHR further alleged that petitioner was arrested for obstructing an officer on July 10, 2019, and admitted to using methamphetamine around July 29, 2019.

In September of 2019, the circuit court held an adjudicatory hearing, during which petitioner stipulated to the allegations contained in the petitions.[2] The circuit court accepted the stipulations and adjudicated petitioner as an abusing parent. Petitioner moved for and was granted a post-adjudicatory improvement period, the terms of which required petitioner to submit to drug screens, attend parenting and adult life skills classes, attend inpatient drug rehabilitation, participate in supervised visitations, and obtain suitable housing and stable employment. However, petitioner failed to attend MDT meetings in October and December of 2019, and the MDT members learned that she had been noncompliant with drug screening. Petitioner also failed to appear at the review hearing held in December of 2019, and the circuit court found that she was not complying with the terms of her improvement period at the review hearing in March of 2020.

The DHHR filed a second amended petition in June of 2020 after petitioner tested positive for heroin and admitted to smoking heroin for several months. In July of 2020, the circuit court held a final review of petitioner's improvement period and terminated it finding that she had not complied with the terms and conditions of the improvement period. In October of 2020, petitioner's counsel withdrew his representation, and she was appointed new counsel who was permitted to continue the next two hearings in November and December of 2020, citing an inability to reach petitioner.

According to the DHHR's court summary in preparation for the final dispositional hearing, petitioner was arrested for possession of a controlled substance in February of 2021. In April of 2021, the circuit court held a final dispositional hearing. The DHHR worker testified that a case plan was created for petitioner during an MDT meeting on December 3, 2019, but petitioner failed to appear for the meeting and sign the case plan. The worker described communications with petitioner as "sporadic" and that when petitioner was having trouble reporting to drug screens and parenting and adult life skills classes at the Raleigh County Day Report Center, the worker obtained a transportation provider, but petitioner "disappeared" immediately thereafter. The worker did not hear from petitioner again until she went into a drug rehabilitation program on July 9, 2020. Petitioner voluntarily left the program on July 14, 2020. The worker explained that when she asked petitioner why she left the program, petitioner answered that she was not ready for help. According to the worker, despite the offer of transportation services, petitioner did not complete parenting and adult life skills and failed to appear for almost all drug screen appointments. When providers contacted petitioner to complete services, petitioner would make up excuses or say that

---

[2]Petitioner's counsel moved to continue the previously scheduled hearing in August of 2019, as petitioner failed to appear.

she already had transportation. The worker noted that he had not spoken with petitioner since June of 2020 until the day before the hearing when petitioner called him stating that she was now ready to attend drug rehabilitation. On cross-examination by the guardian, when asked what petitioner's explanation was for not participating in the case, the worker stated that petitioner answered that her addiction had taken a toll on her, that she was not in her right mind, and that she had been "dumb" about the "whole thing." In the worker's opinion, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

Next, an employee at the Raleigh County Day Report Center testified that although petitioner was ordered to drug screen twice a week since May of 2019, petitioner participated in a total of twelve drug screens, half of which were positive for methamphetamine. The employee counted 153 missed drug screens on petitioner's report and explained that this total did not include times between March and May of 2020, when the center was closed due to quarantine.

Finally, petitioner testified that she was first unwilling to enter inpatient drug rehabilitation but was now ready to go. She stated that she was sober and would comply with all terms of an improvement period. Petitioner conceded that she had not drug screened since October of 2019 but stated that she did not know that she was required to complete parenting and adult life skills classes. On cross-examination by the guardian, petitioner disclosed that she had pending criminal charges for delivery of a controlled substance, conspiracy to commit a felony, and breaking and entering.

In closing, the DHHR and the guardian requested that the circuit court terminate petitioner's parental rights based upon her continued drug use and complete failure to participate in the DHHR's services. Ultimately, the circuit court found that petitioner's participation in the proceedings had been inconsistent due to her active drug addiction and further found that she had not complied with her case plan. The court noted that the children had been in the DHHR's custody for more than fifteen of the most recent twenty-two months and that it was in their best interest to terminate petitioner's parental rights. Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the future. Accordingly, the circuit court terminated petitioner's parental rights. Petitioner appeals the April 28, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

---

[3]The father completed an improvement period, resulting in the dismissal of the petition against him, and the children were reunified with him.

3

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. Specifically, petitioner contends that she participated in the proceedings below by attending a drug rehabilitation program for approximately a week, visiting the children before the DHHR unilaterally stopped visits, and testing positive for controlled substances only "briefly." Petitioner further asserts that she was willing to attend inpatient drug rehabilitation by the final dispositional hearing. Petitioner argues that she missed many appointments due to the miscommunication issues with the DHHR and transportation issues. Also, according to petitioner, the DHHR did not offer her parenting and adult life skills classes and she was offered no reunification services. Petitioner states that the children remained in foster care for more than fifteen months due to "continuances caused by the DHHR, change and appointment of counsel, COVID-19, and somewhat persistent lack of communication with [petitioner] and the DHHR."

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the record clearly establishes that petitioner failed to participate in most aspects of her improvement period and family case plan. Petitioner claims that she was not offered services, but this contention is utterly belied by the record. The DHHR worker testified that when petitioner complained of the lack of transportation for drug screening and parenting and adult life skills classes, he arranged for providers to help petitioner. However, petitioner failed to respond to the providers or made other excuses for her inability to participate. The record shows that petitioner was aware of the requirement to drug screen as she participated in approximately twelve drug screens. However, over the course of nearly two years that the matter was pending, petitioner missed 153 screens. Petitioner places the blame on the DHHR for "miscommunication" yet fails to cite to any evidence of such miscommunication. Additionally, petitioner conveniently ignores the onus that "[w]hen any improvement period is granted to a respondent pursuant to this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A).

4

Further, petitioner's argument that the case was delayed due to forces outside of her control is disingenuous when considering that she requested continuances and delayed proceedings by failing to appear or staying in touch with her counsel and the DHHR. The record shows that petitioner failed to attend numerous MDT meetings, including the most important one on December 3, 2019, during which the MDT formulated petitioner's case plan. Petitioner failed to attend several hearings, and the record is devoid of excuses for her absences. Finally, although petitioner claims she attended drug treatment, the record shows that she left the program after only five days, which is well below the long-term inpatient drug rehabilitation required of petitioner's case plan. Accordingly, it is clear that petitioner failed to follow through with a reasonable family case plan designed to address the issues of abuse and neglect, and as such we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future. We further find that termination was necessary for the children's welfare, given the extreme length of time—two months shy of two years—that the case had been pending and weighing the children's need for permanency and stability. Indeed, this Court has previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted).

Finally, insomuch as petitioner argues that she was entitled to a less-drastic dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the evidence set forth above, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 28, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton